IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FILE NO. _____

| | | |
|---|---|---|
| THE BURLINGTON, ) | | 2:26-cv-00586-DCN |
| INSURANCE COMPANY ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **COMPLAINT FOR** |
| ) | | **DECLARATORY JUDGMENT** |
| THE BLUE NOTE BISTRO, LLC ) | | |
| and TINA MILES, ) | | |
| ) | | |
| Defendants. ) | | |

**COMES NOW** the Plaintiff, The Burlington Insurance Company ("TBIC"), by and through counsel, and pursuant to Rule 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. § 2201, and alleges and says:

### Preliminary Statement

1. Pursuant to 28 U.S.C. § 2201, TBIC seeks a declaratory judgment and adjudication concerning the rights, obligations and liabilities of the parties under a commercial policy of insurance with respect to claims against Defendant The Blue Note Bistro, LLC in the civil lawsuit captioned "*Tina Miles v. The Blue Note Bistro, LLC* et al.," Case No. 2023-CP-10-01322, which is pending in the Court of Common Pleas for Charleston County, South Carolina (the "Underlying Lawsuit").

### Jurisdiction

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00.

1

## Venue

3. This action properly lies in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (2) since the defendants all reside in the same state and in this judicial district, and since a substantial part of the events giving rise to this declaratory judgment occurred in this judicial district.

## Parties

4. TBIC is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business in Hartford, Connecticut. TBIC is authorized to transact business and write insurance policies in the State of South Carolina.

5. Upon information and belief, Defendant The Blue Note Bistro, LLC ("Blue Note") was at all relevant time alleged herein a limited liability corporation organized and existing under the laws of the State of South Carolina, whose registered agent for service of process is Henry Smalls at 4753 Arco Lane, North Charleston, South Carolina 29418, and at all times relevant herein was doing business and owned property in the State of South Carolina, including in Charleston County.

6. Upon information and belief, Defendant Tina Miles ("Miles") is and was a citizen and resident of Charleston County, South Carolina.

## Facts

**A.    The Underlying Lawsuit**

7. Upon information and belief, on May 23, 2023, Blue Note owned, operated, and/or managed a restaurant/bar known as The Blue Note Bistro located at 7550 Dorchester Road, North Charleston, Charleston County, South Carolina (the "Blue Note Bistro").

8. Upon information and belief, Miles was present at Blue Note Bistro on May 23, 2023.

9. On August 16, 2022, counsel for Miles sent a letter of representation to TBIC, as the liability insurer for Blue Note, advising that his client, Miles, "was injured as a result of a **shooting** that occurred at the Blue Note Bistro" (the "Shooting"). (emphasis added) A true and accurate copy of the Letter of Representation dated August 16, 2022, is attached hereto as **Exhibit 1** and incorporated herein by reference.

10. On January 5, 2023, new counsel for Miles sent an email of representation to TBIC, as the liability insurer for Blue Note, "regarding injuries [his client] sustained during a **shooting** at The Blue Note Bistro on May 22, 2022." (emphasis added) A true and accurate copy of the email dated January 5, 2023, is attached hereto as **Exhibit 2** and incorporated herein by reference.

11. The Incident Report prepared by the North Charleston Police Department in relation to the Shooting indicates that:

> On 5/23/2022 at approximately 1:27 AM, I Ptl. Cain, was dispatched to 7550 Dorchester Rd (Blue Note Bistro) in reference to shots fired with possible victims. When I arrived on scene there were dozens of people running in all directions and fleeing to their vehicles. There were 3 bullet holes I observed in the front windows and door of the business I went inside the dub and observed multiple people complaining of injuries due to either a GSW or from broken glass as a result of the chaos after the shooting.

A true and accurate copy of the Incident Report is attached hereto as **Exhibit 3** and incorporated herein by reference.

12. On March 17, 2023, Miles filed the Underlying Lawsuit, asserting claims arising out of the Shooting, and then filed an Amended Complaint on July 13, 2023, to include the owner of the property at issue. A true and accurate copy of the Amended Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit 4** and incorporated herein by reference.

13. It is alleged in the Amended Complaint that on the night of the Shooting, "[an] armed guest was allowed onto the premises," who fired his weapon.

14. It is specifically alleged that "**[t]he shooting was in retaliation for a prior argument between the shooter and one of Defendants' employees or agents**."

15. During the course of the Shooting, it is alleged that "crowd inside the premises surged towards the back door," which was locked, and so no one could exit to safety, and that "[t]he surging crowd and slick floor caused Plaintiff to slip and fall down."

16. It is alleged that Miles was injured when struck by a bullet and also as a result of her fall caused by the surging crowd and slick floor during the course of the Shooting.

17. In the Underlying Lawsuit, the following claims are asserted against Blue Note: (1) Negligence, (2) Negligent *Per Se*, and (3) Premises Liability.

18. In support of these claims, it is alleged that "Defendants operate the business in such a way as to foster and invite criminal activity," and "failed to take adequate precautions to protect the Plaintiff given the risk of criminal activity at the premises."

19. It is also alleged that "[t]he harm that befell the Plaintiff at Defendant's premises would have been avoided had Defendants followed proper safety practices at the time of the incident," "employed sufficient security personnel at the time of the incident," and "taken steps to keep the floor clean and free from hazards and the emergency exit unlocked and functioning."

20. Furthermore, it is alleged in support of the claims that "Defendants did not have adequate security or safety measures in place to detect the level of intoxication or impairment of patrons in order to create any deterrence or prevention of panic fleeing of patrons from that premises in a disorderly and unsafe manner," and that "Plaintiff was then and there knocked over, trampled upon, and shot while trying to exit the Defendant's premises and escape the violent and uncontrolled environment then and there existing inside the Defendant's premises."

21. Actual damages and punitive damages are sought against Blue Note in the Underlying Lawsuit.

**C.     The TBIC Policy**

22. TBIC had issued to The Blue Note Bistro LLC, as the named insured, a commercial policy of insurance, policy no. 625B002593, effective from August 21, 2021, to August 21, 2022 (the "TBIC Policy").

23. The TBIC Policy includes a Commercial General Liability ("CGL") Coverage Part with a liability limit of $1 million Each Occurrence and a $2 million General Aggregate Limit, and a Liquor Liability Coverage Part with a liability limit of $1 million Each Common Cause and a $2 million Aggregate Limit.

24. A true and accurate copy of the TBIC Policy is attached hereto as **Exhibit 5** and is incorporated herein by reference.

25. TBIC denied coverage to Blue Note under the TBIC Policy for the claims in the Underlying Lawsuit because the "Assault & Battery" exclusion in the policy bars coverage for the claims at issue which arose in whole or in part out of any "assault" or "battery" committed or attempted by any person or any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault," "battery," or verbal or physical confrontation or altercation.

**D.     The Damages Order against Blue Note**

26. Following TBIC's denial of coverage under the TBIC Policy for the claims asserted against Blue Note in the Underlying Lawsuit, Blue Note failed to respond to the Complaint or the Amended Complaint in the Underlying Lawsuit, and an Entry of Default was made against Blue Note on September 18, 2023.

27. On January 14, 2026, a Damages Order was entered against Blue Note, awarding damages in the amount of $295,311.92 in the Underlying Lawsuit.

28. TBIC has filed the present action in order to seek a declaration relative to the rights, duties, and obligations of the parties under the TBIC Policy with regard to the claims and damages against Blue Note in the Underlying Lawsuit, including the Damages Order entered against Blue Note.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – No Coverage under the TBIC Policy)

29. TBIC incorporates by reference the preceding paragraphs as if fully set forth herein.

30. The "Assault & Battery" exclusions applicable to the CGL Coverage Part and the Liquor Liability Coverage Part in the TBIC Policy provides as follows:

**EXCLUSION – ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**[1]
**\*\*\***

**D.**     This insurance does not apply to:

    **a.**     **Assault, Battery Or Other Physical Altercation**

        "Bodily injury" or "property damage":

        **(1)**    Expected or intended from the standpoint of any insured.

        **(2)**    Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.

        **(3)**    Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

        **(4)**    Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

        \* \* \*

---

[1] The "Assault & Battery" exclusion quoted herein is found in the CGL Coverage Part to the TBIC Policy and is identical in all relevant respects to the "Assault & Battery" exclusion in the Liquor Liability Coverage Part in the TBIC Policy.

6

      **G.**    The exclusions added in paragraphs **D**, **E** and **F** of this endorsement apply to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

      **H.**    The following are added to the **Definitions** Section of this policy:

"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.

"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

31. A genuine, actual, and justiciable controversy has now arisen and presently exists between and among the parties to this action concerning the applicable coverage afforded by TBIC under the TBIC Policy for the claims or damages resulting from the allegations contained in the Underlying Lawsuit, and specifically whether the TBIC Policy provides coverage to Blue Note for the claims in the Underlying Lawsuit.

32. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as to whether TBIC had an obligation under the TBIC Policy to defend and/or indemnify Blue Note in the Underlying Lawsuit.

33. The TBIC Policy does not provide coverage to Blue Note for the claims in the Underlying Lawsuit because:

    a.    The "Assault & Battery" exclusions in the TBIC Policy exclude coverage under the policy for the claims in the Underlying Lawsuit because the injury or

        damage claimed (1) arose in whole or in part out of an "assault" or "battery" committed or attempted by any person, (2) arose in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery," or (3) arose in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation;

b.    The claims asserted in the Underlying Lawsuit do not fall within the coverage afforded under the "Insuring Agreement" for Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the claims were not caused by an "occurrence" as that term is defined in the TBIC Policy; and

c.    The "Liquor Liability" exclusion bars coverage under Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the "bodily injury" claimed in the Underlying Lawsuit is "bodily injury" for which any insured may be held liable by reason of: (1) causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises; (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

34.    The TBIC Policy does not provide coverage to Blue Note for any of the claims in the Underlying Lawsuit because the TBIC Policy contains other terms, conditions, and

exclusions which otherwise preclude coverage for the claims which have been asserted against Blue Note.

35. TBIC requests this Court to declare the rights, obligations, and liabilities of the parties under the TBIC Policy with respect to the claims asserted in the Underlying Lawsuit. Specifically, TBIC is entitled to a judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring and adjudging that it did not have an obligation to defend Blue Note under the TBIC Policy in relation to the claims in the Underlying Lawsuit and that TBIC does not have a duty to indemnify Blue Note for the claims in the Underlying Lawsuit, including the Damages Order entered against Blue Note in the Underlying Lawsuit.

**WHEREFORE,** Plaintiff The Burlington Insurance Company respectfully prays the Court as follows:

1. That the Court declare and decree that the TBIC Policy does not afford coverage to Blue Note for any of the claims in the Underlying Lawsuit;

2. That the Court declare and decree that TBIC was not required to defend Blue Note under the TBIC Policy in relation to the Underlying Lawsuit;

3. That the Court declare and decree that TBIC is not required to indemnify Blue Note under the TBIC Policy for the claims in the Underlying Lawsuit, including the Damages Order entered against Blue Note in the Underlying Lawsuit;

4. That the costs of this action be taxed against the Defendants;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court may deem just and proper.

This the 11th day of February, 2026.

          /s/ David G. Harris II
          David G. Harris II (S.C. Federal Bar No.: 12039)
          David L. Brown (N.C. State Bar No. 18942)
          GOLDBERG SEGALLA LLP
          701 Green Valley Road, Suite 310
          Greensboro, North Carolina 27408
          Telephone:   336.419.4900
          Facsimile:    336.419.4950
          Email:        dbrown@goldbergsegalla.com
                         dharris@goldbergsegalla.com

*Attorneys for The Burlington Insurance Company*