IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA
CIVIL ACTION NO. 2:26-cv-00586-DCN

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE BLUE NOTE BISTRO, LLC and TINA MILES, | ) ) ) |
| Defendants. | ) ) |

---

**PLAINTIFF THE BURLINGTON INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT BLUE NOTE'S MOTION TO DISMISS**

---

David G. Harris II
S.C. Federal Bar No.  12039
David L. Brown
N.C. State Bar No. 18942
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina  27408
Telephone:     336.419.4900
Facsimile:     336.419.4950
Email:     dbrown@goldbergsegalla.com
             dharris@goldbergsegalla.com

*Attorneys for Plaintiff The Burlington Insurance Company*

-i-

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

RESPONSE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

I.      TBIC HAS STATED A VALID CLAIM FOR
        DECLARATORY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

II.     THE TBIC POLICY DOES NOT PROVIDE COVERAGE FOR
        THE CLAIMS IN THE UNDERLYING LAWSUIT . . . . . . . . . . . . . . . . . . . . . . .   12

        A.      Interpretation of Insurance Policies under South Carolina Law . . . . . . . . . .   12

        B.      Application of "Assault and Battery" Exclusions
                under South Carolina Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

        C.      The "Assault & Battery" Exclusions in the TBIC Policy
                Bar Coverage for the Claims in the Underlying Lawsuit . . . . . . . . . . . . . . .   19

III.    THE COURT SHOULD NOT ABSTAIN
        FROM EXERCISING JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

-ii-

## TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*,
      139 F.3d 419 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Aetna Casualty & Surety Co. v. Quarles*,
      92 F.2d 321 (4th Cir. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23-24

*Am. S. Ins. Co. v. Moras Roofing, LLC*,
      2010 WL 2710588, 2010 U.S. Dist. LEXIS 67787 (D.S.C. July 7, 2010) . . . . . . . .   13

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Broadwater v. State*,
      494 A.2d 934 (Md. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Brown-Thomas v. Hynie*,
      412 F. Supp. 3d 600 (D.S.C. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8-9

*B.L.G. Enters., Inc. v. First Fin. Ins. Co.*,
      334 S.C. 529, 514 S.E.2d 327 (S.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Britamco Underwriters, Inc. v. Zuma Corporation*,
      576 So. 2d 965 (Fla. 5th DCA 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Burns v. State Farm Mut. Auto. Ins. Co.*,
      297 S.C. 520, 377 S.E.2d 569 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Canopius US Ins., Inc. v. Middleton*,
      202 F.Supp.3d 540 (D.S.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*,
      49 Cal.Rptr.2d 567 (Cal.App.4th 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Collins Holding Corp. v. Wausau Underwriters Ins. Co.*,
      379 S.C. 573, 666 S.E.2d 897 (S.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Cont'l Cas. Co. v. Fuscardo*,
      35 F.3d 963 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

-iii-

*DHW Purchasing Grp., LLC v. Hub Int'l Midwest Ltd.*,
   2019 WL 5700457, 2019 U.S. Dist. LEXIS 192491 (D.S.C. Nov. 4, 2019) . . .     14, 18

*Diamond State Ins. Co. v. Homestead Indus., Inc.*,
   318 S.C. 231, 456 S.E.2d 912 (S.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

*Founders Ins. Co. v. Barn Club, Inc.*, No. 0:11–3132–CMC,
   2012 U.S. Dist. LEXIS 158034, 2012 WL 5398215 (D.S.C. Nov. 2, 2012) . . . . . .     15

*Founders Ins. Co. v. Hamilton*,
   2017 WL 3415074, 2017 U.S. Dist. LEXIS 125750 (D.S.C. Aug. 9, 2017) . . .     13, 15

*Francis v. Giacomelli*,
   588 F.3d 186 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

*Fritz-Pontiac-Cadillac-Buick v. Goforth*,
   312 S.C. 315, 440 S.E.2d 367 (S.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

*Hudson v. Jager Bomb LLC*,
   107 So. 3d 712 (La. App. 2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

*Jessco, Inc. v. Builders Mut. Ins. Co.*,
   472 Fed. Appx. 225 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13

*Kettler Int'l, Inc. v. Starbucks Corp.*,
   55 F. Supp. 3d 839 (E.D. Va. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
   312 U.S. 270 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

*Medimmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

*N.Y. Life Ins. Co. v. Scott*,
   2021 WL 4086483, 2021 U.S. Dist. LEXIS 170058 (D.S.C. Sep. 7, 2021) . . . . .     8, 10

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
   15 F.3d 371 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24-26

*Oceola Dev. & Constr., LLP v. Int'l Ins. Co. of Hannover, PLC*,
   2020 WL 1677539, 2020 U.S. Dist. LEXIS 60083 (D.S.C. Apr. 6, 2020) . . . . . . .     14

*Palmer v. Audi of Am., Inc.*,
   2015 U.S. Dist. LEXIS 3788, 2015 WL 222127 (D. Md. Jan. 13, 2015) . . . . . .     8-9

-iv-

*Republican Party of N.C. v. Martin*,
980 F.2d 943 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Rhame v. Nat'l Grange Mut. Ins. Co.*,
238 S.C. 539, 121 S.E.2d 94 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12-13

*Scottsdale Ins. Co. v. GS Thadius LLC*,
328 F. Supp. 3d 527 (D.S.C. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14-16, 20

*Scottsdale Ins. Co. v. Moonshine Saloon, LLC*,
228 F.Supp.3d 554 (D.S.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17, 20

*Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*,
269 S.C. 183, 236 S.E.2d 818 (S.C. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

*Sphere Drake Ins. Co. v. Litchfield*,
313 S.C. 471, 438 S.E.2d 275 (S.C. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . .    13

*St. Paul Reinsurance Co. Ltd. v. Riviello*,
296 Fed. Appx. 377 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13-14

*State Auto Prop. & Cas. Co. v. Brannon*,
310 S.C. 388, 426 S.E.2d 810 (S.C. Ct. App. 1992) . . . . . . . . . . . . . . . . . . . . . . .    13

*The Burlington Ins. Co. v. Am. Legion Post 230*,
2018 U.S. Dist. LEXIS 158911, 2018 WL 6566589 (S.D.Miss. Sept. 18, 2018) . .    18

*The Burlington Ins. Co. v. Ceasar Salmoran d/b/a Mambo's Night Club*,
181 F. Supp. 3d 810 (D. Nev. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

*The Burlington Ins. Co. v. De La Puente*,
719 F. App'x 615 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*The Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*,
2019 U.S. Dist. LEXIS 168508, 2019 WL 4783111 (W.D. Ken. Sept. 30, 2019) . .    18

*The Burlington Ins. Co. v. Lowery's Social Club dba Sasser's*,
2025 U.S. Dist. LEXIS 107541 (D.S.C. Mar. 13, 2025) . . . . . . . . . . . . . . . .    14, 17-18

*The Burlington Ins. Co. v. Normandy General Partners, LLC*,
560 Fed. Appx. 844 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

*The Burlington Ins. Co. v. Phillips-Garrett, Inc.*,
37 F. Supp. 3d 1005 (S.D. Ill. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

-v-

*Torrington Co. v. Aetna Cas. & Sur. Co.*,
  264 S.C. 636, 216 S.E.2d 547 (S.C. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*USAA Prop & Cas. Ins. Co. v. Clegg*,
  377 S.C. 643, 661 S.E.2d 791 (S.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
  386 F.3d 581 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*White v. Covington Specialty Ins. Co.*,
  2024 WL 4929744, 2024 U.S. Dist. LEXIS 217450 (D.S.C. Dec. 2, 2024) . . .   14, 17

*Womack v. Mar Jay Prods., L.L.C.*,
  298 So. 3d 745 (La. App. 1st Cir. Feb. 21, 2020) . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Zelda, Inc. v. Northland Ins. Co.*,
  56 Cal. App. 4th 1252 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

## Other Authorities

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Pursuant to Local Rules 7.05 and 7.06 of the U.S. District Court for the District of South Carolina, Plaintiff The Burlington Insurance Company ("TBIC"), by and through counsel, submits the following Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendant The Blue Note Bistro, LLC ("Blue Note") [D.E. 7] in this declaratory judgment action.

## INTRODUCTION

TBIC filed this declaratory judgment action, seeking a declaration that Blue Note is not entitled to coverage under a commercial policy of insurance, policy no. 625B002593 (the "TBIC Policy"), issued by TBIC to Blue Note for claims asserted against Blue Note by Defendant Tina Miles ("Miles") in an underlying lawsuit captioned "*Tina Miles v. The Blue Note Bistro, LLC* et al.," No. 2023-CP-10-01322, Charleston County, South Carolina (the "Underlying Lawsuit"). The Underlying Lawsuit arose out of a shooting that took place at a bar owned by Blue Note—which is alleged to have been in retaliation for a prior argument between the shooter and one of Blue Note's employees or agents. It is alleged that during the course of the shooting, the crowd inside of the bar surged toward the back door and "[t]he surging crowd and slick floor caused [Miles] to slip and fall down," and that she "was also struck by a bullet."

TBIC denied coverage under the TBIC Policy for the claims asserted against Blue Note in the Underlying Lawsuit because the policy contains "Assault & Battery" exclusions which barred coverage for the claims at issue. The "Assault & Battery" exclusions in the TBIC Policy broadly exclude coverage for injury or damage that arose in whole or in part out of (1) any "assault" or "battery" committed or attempted by any person, (2) any act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery," or (3) any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing, or halting

1

any actual or threatened verbal or physical confrontation or altercation. Further, the "Assault & Battery" exclusions expressly state that they apply to all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort.

In the Motion to Dismiss, Blue Note argues that this Court should dismiss this declaratory judgment action because the Complaint "failed to state a claim upon which relief can be granted." [D.E. 7, p. 2] In doing so, Blue Note attempts to pull isolated words and phrases out of the complaint in an effort to manufacture coverage for the claims in the Underlying Lawsuit. This attempt to manufacture coverage fails because based on a plain reading of the allegations, that the "Assault & Battery" exclusion plainly bars coverage for the claims at issue. However, more fundamentally, the argument raised by Blue Note that this declaratory judgment action should be dismissed—which focuses on the merits of the claim for declaratory relief rather than whether a claim for declaratory relief has been stated—has been squarely rejected by courts. When addressing whether a declaratory judgment action should be dismissed, courts evaluate whether an actual controversy has been pled, not whether a party seeking the declaratory relief will ultimately be entitled to such relief on the merits. Here, TBIC has pled an actual controversy as to the coverage afforded under the TBIC Policy. Accordingly, Blue Note's Motion to Dismiss fails at its inception.

Further, if the Court is inclined to address the merits of the request for declaratory relief, the Court should hold that TBIC is entitled to the relief requested and that coverage is not afforded under the TBIC Policy for the claims in the Underlying Lawsuit based on a plain reading of the allegations in the Underlying Lawsuit and the terms of the TBIC Policy. As alleged in the Underlying Lawsuit, there was a shooting at Blue Note's bar, which caused the crowd to surge toward a locked back door. Miles then alleges in the Underlying Lawsuit that she sustained injuries

2

during the shooting when she slipped and fell as a result of the surging crowd and slick floor and was struck by a bullet. In fact, Miles alleges that she was "knocked over, trampled upon, and shot while trying to exit the Defendant's premises and escape the violent and uncontrolled environment then and there existing inside the Defendant's premises." These allegations were deemed admitted by Blue Note when it failed to respond to the pleadings and a default was entered against Blue Note in the Underlying Lawsuit. Under these facts, the "Assault & Battery" exclusion plainly applies to bar coverage for the claims asserted against Miles in the Underlying Lawsuit because the injuries for which Miles seeks recovery arose, at least in part, out of an assault, battery, or other altercation or an act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened assault, battery, or altercation.

Blue Note also argues (without any legal support) that it would be improper for this Court to assume jurisdiction over this matter because a judgment was entered against Blue Note in the Underlying Lawsuit, and Miles filed a coverage action in South Carolina state court (after TBIC filed the present action) seeking declaratory judgment that coverage exists in favor of Miles for the claims in the Underlying Lawsuit. As an initial matter, the fact that a judgment was entered against Blue Note in the Underlying Lawsuit has no bearing on whether this Court has jurisdiction over this coverage action. The Underlying Lawsuit filed against Blue Note (not TBIC) involved the question of liability against Blue Note for the injuries allegedly sustained by Miles, not whether coverage is afforded under TBIC Policy for such claims, and therefore, is not a parallel state court action. Additionally, the coverage action filed by Miles after TBIC filed this action has been removed to this Court, and so it is also not a parallel state court action that could serve as the basis for dismissal of this action under any abstention doctrine. Further, even if the second-filed coverage action filed by Miles was a pending parallel state court action,

3

the *Nautilus* factors used by courts to determine whether abstention is appropriate do not weigh in favor of dismissal of this action.

Therefore, this Court should deny the Motion to Dismiss filed by Miles. However, to the extent that the Court is inclined to rule on the substantive issue of whether coverage is afforded under the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit at this stage of the proceedings, the Court should hold that Blue Note was not entitled to coverage under the TBIC Policy for the claims asserted against it in the Underlying Lawsuit, and therefore, TBIC does not have an obligation to indemnify Blue Note for the claims asserted against it in the Underlying Lawsuit.[1]

## **NATURE OF THE CASE**

TBIC filed this declaratory judgment action on February 11, 2026, seeking a declaration that Blue Note is not entitled to coverage under the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit. Miles had filed the Underlying Lawsuit in order to seek recovery for injuries that she allegedly sustained during a shooting that took place at a bar owned by Blue Note. It is specifically alleged in the Underlying Lawsuit that Miles was a patron of the bar when there was a shooting "in retaliation for a prior argument between the shooter and one of [Blue Note's] employees or agents." [D.E. 1, ¶ 14; D.E. 1-4, ¶ 24] After the armed patron fired his weapon, it is alleged that the "crowd inside the premises surged towards the back door," and that "[t]he surging crowd and slick floor caused [Miles] to slip and fall down." [D.E. 1, ¶¶ 15; D.E. 1-4, ¶¶ 17–21] It is alleged that Miles was injured when she was "knocked over, trampled upon, and shot while trying to exit the Defendant's premises and escape the violent and uncontrolled

---

[1] To the extent that the Court decides not to rule on the substantive issue of whether coverage is afforded under the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit at this time, TBIC intends to file a motion for judgment on the pleadings at the close of the pleadings in this action.

environment then and there existing inside the Defendant's premises." [D.E. 1, ¶ 16; D.E. 1-4, ¶¶ 62–63]

Miles asserted claims for Negligence, Negligence *Per Se*, and Premises Liability against Blue Note in the Underlying Lawsuit. [D.E. 1-4]  In support of these claims, it is alleged that there have been other shootings at Blue Note's premises, such that Blue Note was on notice of the need for proper security, and that Blue Note failed to take steps to keep the floor clean and free from dangerous, slick conditions, failed to ensure the emergency exit was unlocked and functioning, operated the business in such a way as to foster and invite criminal activity, and did not employ any security personnel or contractors. [D.E. 1-4, ¶¶ 25–28]  It is also alleged that Blue Note did not have adequate policies or procedures in place to safely or adequately control violence inside its premises or to safely exit patrons out of its premises when violence or safety issues occurred. *Id.* at ¶ 58.  As a result, it is alleged that "[Miles] suffered from being knocked over, trampled upon, and shot by other patrons then and there fleeing in an unsupervised and panicked manner from the premises of the Defendants." *Id.* at ¶ 63.

Blue Note was served with the Amended Complaint in the Underlying Lawsuit on July 18, 2023, and tendered the Amended Complaint to TBIC for coverage under the TBIC Policy. TBIC denied coverage under the TBIC Policy for the claims in the Underlying Lawsuit because the "Assault & Battery" exclusions in the policy barred coverage for the claims at issue. [D.E. 1, ¶ 25]  The "Assault & Battery" exclusions in the TBIC Policy bar coverage under policy for "bodily injury," "property damage," or "injury":

> **(1)**    Expected or intended from the standpoint of any insured.
>
> **(2)**    Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
>
> **(3)**    Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

5

**(4)**    Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

[D.E. 1-5, pp. 23 and 62][2]  The "Assault & Battery" exclusions in the TBIC Policy also expressly provide that the exclusions:

**[A]pply to all acts or omissions**, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation **and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness** or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

*Id.*    The "Assault & Battery" exclusions define an "assault" as "any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm," and define a "battery" as "physical contact with a person without his or her consent that entails some injury or offensive touching." *Id.*

Following TBIC's denial of coverage under the TBIC Policy for the claims asserted against Blue Note in the Underlying Lawsuit, Blue Note failed to respond to the Complaint and the Amended Complaint in the Underlying Lawsuit.  As a result, an Entry of Default and Damages Order were entered against Blue Note in the Underlying Lawsuit. [D.E. 1, ¶¶ 26–27]

After counsel for Miles presented TBIC with the Damages Order, TBIC filed this action on February 11, 2026, seeking a declaration relative to the rights, duties, and obligations of the parties under the TBIC Policy with regard to the claims and damages against Blue Note in the Underlying Lawsuit, including the Damages Order entered against Blue Note.  Specifically,

---

[2] The TBIC Policy includes two coverage parts applicable to this matter—the CGL Coverage Part and the Liquor Liability Coverage Part.  Each of these coverage parts includes an "Assault & Battery" exclusions which are identical in all relevant respects as applicable to the claims at issue.

TBIC seeks a declaration in this action that it did not have an obligation to defend Blue Note under the TBIC Policy in relation to the claims in the Underlying Lawsuit and that TBIC does not have a duty to indemnify Blue Note for the claims in the Underlying Lawsuit, including the Damages Order entered against Blue Note. *Id.* at ¶ 35.

After TBIC filed this declaratory judgment insurance coverage action and had emailed a copy of the Complaint for Declaratory Judgment to counsel for Miles with a request that his client waive service, counsel for Miles filed a competing declaratory judgment action in South Carolina state court on February 12, 2026.[3]  The Second-filed Coverage Action seeks the mirror-image of the relief sought in this action, asking for "an Order finding that Defendants' coverage extends to the incident alleged in the underlying lawsuit." [D.E. 1-1 in the Second-filed Coverage Action] TBIC removed the Second-filed Coverage Action to this Court on March 10, 2026 [D.E. 1 in the Second-filed Coverage Action] and filed an Answer and Counterclaim for Declaratory Judgment in the Second-filed Coverage Action seeking the same relief requested in this action.

In response to the Complaint for Declaratory Judgment filed by TBIC in this action, Blue Note filed a Motion to Dismiss, taking the position that this declaratory judgment action "failed to state a claim upon which relief can be granted," and that "this court lacks jurisdiction due to parallel state court proceedings." [D.E. 7, p. 2][4]  For the reasons set forth below, this Court should deny the Motion to Dismiss filed by Blue Note in this matter.

---

[3] The competing insurance coverage action is captioned "*Tina Miles v. The Burlington Ins. Co. and The Blue Note Bistro*," and is currently pending under C.A. No. 2:26-cv-01031-DCN in the U.S. District Court for the District of South Carolina, after being removed by TBIC to federal court on March 10, 2026 (the "Second-filed Coverage Action").

[4] Miles agreed to waive service in this action and counsel for Miles filed a Waiver of Service of Summons on behalf of Miles on March 26, 2026, making its response to the Complaint for Declaratory Judgment due May 26, 2026. [D.E. 11]

## RESPONSE ARGUMENT

### I.    TBIC HAS STATED A VALID CLAIM FOR DECLARATORY JUDGMENT.

In support of its Motion to Dismiss, Blue Note argues that this Court should dismiss this declaratory judgment action because it believes that the Court should declare that coverage is afforded under the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit. In essence, Blue Note argues the merits of TBIC's request for declaratory relief in seeking dismissal of this declaratory judgment action. Courts have repeatedly rejected attempts to argue the merits of the relief sought in a declaratory judgment action as the basis to seek the dismissal of the action. As such, this Court should similarly reject the Motion to Dismiss filed by Blue Note in this declaratory judgment action.

"A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted 'challenges the legal sufficiency of a complaint.'" *Brown-Thomas v. Hynie*, 412 F. Supp. 3d 600, 605 (D.S.C. 2019) (citing *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) … does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that to survive a motion to dismiss, the complaint must provide enough facts to "state a claim to relief that is plausible on its face") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In a declaratory judgment action, "a motion to dismiss 'is rarely appropriate.'" See e.g. *N.Y. Life Ins. Co. v. Scott*, 2021 WL 4086483, 2021 U.S. Dist. LEXIS 170058, at *5 (D.S.C. Sep. 7, 2021); *Brown-Thomas*, at 606 (D.S.C. 2019); *Palmer v. Audi of Am., Inc.*, No. GJH-14-03189, 2015 U.S. Dist. LEXIS 3788, 2015 WL 222127, at *2 (D. Md. Jan. 13, 2015).

When evaluating a motion to dismiss a declaratory judgment action , courts in this circuit have advised that:

> Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, **it is immaterial that the ultimate ruling may be unfavorable to the plaintiff**. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, **even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree**.

*Palmer*, 2015 U.S. Dist. LEXIS 3788, 2015 WL 22212, at *2 (quoting *Broadwater v. State*, 494 A.2d 934, 936 (Md. 1985)).  As a result, a motion to dismiss an declaratory judgment action is only proper when "a complaint fails to allege a justiciable controversy." See *Brown-Thomas*, at 606.

With this backgrounds, the Fourth Circuit has identified three elements to evaluate whether a plaintiff has stated a claim for declaratory relief under the Declaratory Judgment Act— (1) the complaint must allege "an actual controversy" between the parties "of sufficient reality to warrant issuance of a declaratory judgment," (2) there must be an independent basis for jurisdiction, and (3) the court cannot abuse its discretion in exercising jurisdiction. See *Brown-Thomas*, at 608–09 (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004); *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Blue Note fails to address any of these elements in its Motion to Dismiss.  Rather, Blue Note does exactly what courts have held is improper in seeking the dismissal of a declaratory judgment action, arguing that this court should dismiss this action because

9

Blue Note believes that this court should ultimately find that coverage is afforded under the TBIC Policy for the claims asserted against Blue Note in the Underlying Lawsuit. [D.E. 7, p. 8] See e.g. *N.Y. Life Ins. Co. v. Scott*, 2021 U.S. Dist. LEXIS 170058, at *7–10 (rejecting the defendants' arguments that challenged the merits of plaintiff's claims for declaratory relief under an insurance policy rather than whether the plaintiff's complaint stated an actual controversy between the parties as to whether coverage was afforded).

Under the framework used by courts in this circuit to evaluate whether a motion to dismiss a declaratory judgment action is appropriate, Blue Note's Motion to Dismiss must be denied. Under the first element (whether an actual controversy exists between the parties), the Complaint for Declaratory Judgment states an actual controversy between the parties as to whether coverage is afforded under the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit. [D.E. 1, ¶¶ 31–35]    Further, given the Damages Order entered against Blue Note in the Underlying Lawsuit in relation to the Damages Order, the controversy is of sufficient reality to warrant issuance of a declaratory judgment. *Id.* ¶¶ 27–30.  In fact, Blue Note's argument that coverage should be afforded for the claims in the Underlying Lawsuit demonstrates that there is "an actual controversy" between the parties "of sufficient reality to warrant issuance of a declaratory judgment."   In other words, Blue Note's own argument supports that there is "an actual controversy" between the parties, such that its Motion to Dismiss should be denied.

As to the second element (an independent basis for jurisdiction), this Court has jurisdiction over this matter based on the complete diversity of citizenship between the parties as set forth in TBIC's Complaint because TBIC is a citizen and resident of the States of Illinois and Connecticut and both Blue Note and Miles are citizens and residents of the State of South Carolina. [D.E. 1, ¶¶ 2, 4–6]  No party has challenged this Court's basis for jurisdiction in this action.

10

As to the third element (the court cannot abuse its discretion in exercising jurisdiction), courts balance several factors, including "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding; (3) considerations of federalism, efficiency, and comity; and (4) whether the declaratory judgment action is merely being used … for procedural fencing." *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 848 (E.D. Va. 2014) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co*., 139 F.3d 419, 422–23 (4th Cir. 1998)).  As discussed above, this action will serve a useful purpose in clarifying the legal relations between the parties as to the coverage afforded under the TBIC Policy and whether TBIC has an obligation to indemnify Blue Note for the Damages Order entered against Blue Note in the Underlying Lawsuit.  Additionally, the requested declaratory relief would provide certainty as to the question of coverage for the claims in the Underlying Lawsuit, which would also allow for efficient litigation.  Further, there is no consideration of federalism or comity that would suggest that this court would be abusing its discretion by exercising jurisdiction in this matter.  Finally, there is no evidence or argument raised by counsel for Blue Note that this declaratory judgment action is merely being used for procedural fencing.

Accordingly, TBIC has pleaded sufficient facts to state a claim for a declaratory judgment in this action, and the argument raised by Blue Note in support of its Motion to Dismiss— which attacks the merits of the claim for declaratory relief rather than address the elements set forth by the Fourth Circuit to test the sufficiency of a claim for declaratory relief— has been squarely rejected by courts in this circuit.  Therefore, this Court should deny the Motion to Dismiss filed by Blue Note in this action.

11

**II.    THE TBIC POLICY DOES NOT PROVIDE COVERAGE FOR THE CLAIMS IN THE UNDERLYING LAWSUIT.**

If the Court is inclined to address the merits of the relief sought in this action—whether the TBIC Policy provided coverage for the claims asserted by Miles against Blue Note in the Underlying Lawsuit—at this stage in the litigation, this Court should hold that the claims asserted against Blue Note in the Underlying Lawsuit are not covered under the TBIC Policy, and therefore, TBIC has no obligation to indemnify Blue Note for the claims asserted against Blue Note in the Underlying Lawsuit.  Contrary to the arguments raised by Blue Note, this result follows from a plain reading of the pleadings in the Underlying Lawsuit and the language of the TBIC Policy, including the "Assault & Battery" exclusions, which bars coverage for the claims at issue.

**A.    Interpretation of Insurance Policies under South Carolina Law.**

"Insurance policies are subject to general rules of contract construction" and policy language must be given "its plain, ordinary and popular meaning." *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 456 S.E.2d 912 (S.C. 1995).  As such, when a policy is clear and unambiguous, it must be construed according to its terms. *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 312 S.C. 315, 440 S.E.2d 367 (S.C. 1994); *see also Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (S.C. 1977) ("Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.").

Although exclusions in insurance policies are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations which are not in contravention of public policy or a statutory prohibition. *B.L.G. Enter. v. First Fin. Ins. Co.*, 334 S.C. 529, 535–36, 514 S.E.2d 327, 330 (1999) (internal citations omitted); *see also Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 377 S.E.2d 569 (1989); *Rhame v.*

*Nat'l Grange Mut. Ins. Co.*, 238 S.C. 539, 121 S.E.2d 94 (1961).   Furthermore, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." *State Auto Prop. & Cas. Co. v. Brannon*, 310 S.C. 388, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992); *Founders Ins. Co. v. Hamilton*, 2017 WL 3415074, 2017 U.S. Dist. LEXIS 125750, at *8 (D.S.C. Aug. 9, 2017); *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 216 S.E.2d 547 (S.C. 1975).

Questions of coverage and the duty to defend under an insurance policy generally are determined by the allegations of the complaint, which involve an analysis of the allegations of the complaint and not the identified causes of action. *Jessco, Inc. v. Builders Mut. Ins. Co.*, 472 Fed. Appx. 225 (4th Cir. 2012); see *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 379 S.C. 573, 666 S.E.2d 897, 899–900 (S.C. 2008).   Moreover, an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer. *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 661 S.E.2d 791, 798 (S.C. 2008). If an insured has no duty to defend, it will know that it has no duty to indemnify. *Am. S. Ins. Co. v. Moras Roofing, LLC*, 2010 WL 2710588, 2010 U.S. Dist. LEXIS 67787, at *4 (D.S.C. July 7, 2010).

## B.    Application of "Assault and Battery" Exclusions under South Carolina Law.

Based upon these general rules of construction, South Carolina courts routinely apply "Assault & Battery" exclusions to bar coverage for claims, including negligence claims, arising out of an "assault," "battery," or other altercations similar to the Shooting at issue in the present matter. See e.g. *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 474, 438 S.E.2d 275, 277 (Ct. App. 1993) (reversing the trial court and holding that the "assault and battery" exclusion applied to bar coverage for negligence claims against the insured because such claims arose out of an assault or battery within the exclusion); *St. Paul Reinsurance Co. v. Riviello*,

13

296 Fed. Appx. 377, 380 (4th Cir. 2008) (holding that an "assault and battery" exclusion unambiguously applied to bar coverage such that the insurer did not have a duty to defend or indemnify the insured); *The Burlington Insurance Company v. Lowery's Social Club dba Sasser's*, 2025 U.S. Dist. LEXIS 107541 (D.S.C. Mar. 13, 2025) (holding that negligence claims against the insured arose out of the altercation because, but for the altercation, the claimants would not have sustained their injuries, and so the "Assault & Battery" exclusion barred coverage for all of the claims against the insured, including the negligence claims); *White v. Covington Specialty Ins. Co.*, 2024 WL 4929744, 2024 U.S. Dist. LEXIS 217450 (D.S.C. Dec. 2, 2024) (holding that the altercation and gun shots that occurred at the club which formed the basis of the plaintiff's negligence claim constituted an assault and battery under the Burlington policy such that the claims asserted against the insured were expressly excluded under the "Assault & Battery" exclusion); *Oceola Dev. & Constr., LLP v. Int'l Ins. Co. of Hannover, PLC*, 2020 WL 1677539, 2020 U.S. Dist. LEXIS 60083, at *11 (D.S.C. Apr. 6, 2020) (applying the "Assault & Battery" exclusion in the policy to bar coverage for claims for negligent hiring, retention, and supervision where an employee assaulted a co-employee where the negligence claims would fail without the intentional act because such act was the causal connection between the insured's alleged negligence and the claimant's resulting injury); *DHW Purchasing Grp., LLC v. Hub Int'l Midwest Ltd.*, 2019 WL 5700457, 2019 U.S. Dist. LEXIS 192491 (D.S.C. Nov. 4, 2019) (holding that the "Assault & Battery" exclusion precluded coverage for injuries arising from an incident even if the insured's characterization of the incident as one of negligence were accepted because the claim arose at least in part out of any "assault" or "battery" committed or attempted by any person or in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery" or "actual or threatened verbal or physical confrontation or altercation"); *Scottsdale Ins. Co. v. GS Thadius LLC*, 328 F. Supp. 3d 527 (D.S.C. July 2, 2018)

14

(applying the "Assault & Battery" exclusion to bar coverage for negligence claims because "without the assault and battery, i.e., the brawl, the Decedent would not have been knocked to the ground unconscious and subsequently run over"); *Founders Ins. Co. v. Hamilton*, No. 5:15-CV-00408-JMC, 2017 U.S. Dist. LEXIS 125750, 2017 WL 3415074 (D.S.C. Aug. 9, 2017) (holding that the "Assault & Battery" exclusion not only barred coverage for claims of assault and battery, but also negligence claims arising out of an assault or battery); *Founders Ins. Co. v. Barn Club, Inc.*, No. 0:11–3132–CMC, 2012 U.S. Dist. LEXIS 158034, 2012 WL 5398215 (D.S.C. Nov. 2, 2012) (holding that an "Assault & Battery" exclusion barred coverage for negligent security claims).

In so holding, South Carolina courts routinely interpret "Assault & Battery" exclusions to bar claims arising at least in part out of an assault or battery, whether such claims are directly for an assault and battery or negligence claims related to the assault and battery. For example, in *Scottsdale Ins. Co. v. GS Thadius LLC*, the court addressed the application of an "Assault & Battery" exclusion similar to the exclusion at issue in the present matter. *Scottsdale Ins. Co. v. GS Thadius LLC*, 328 F. Supp. 3d 527, 533 (D.S.C. 2018). In *Thadius*, the insured-bar sought coverage under a liquor liability policy for claims against it in an underlying wrongful death action. *Id.* at 529. The decedent in the underlying lawsuit had sustained injuries when he was run over by an SUV after being knocked unconscious during a brawl that occurred in the parking lot of the bar. *Id.* The complaint alleged various claims against the bar, including negligence claims, and the estate argued that the death was caused not by an assault or battery, but rather by a patron running over the decedent in her intoxicated state which was caused by the act of the bars overserving her liquor. *Id.* at 535.

The *Thadius* court found that the "Assault & Battery" exclusion barred coverage for all of the claims at issue in the underlying lawsuit. *Id.* at 538. In reaching this conclusion,

15

the *Thadius* court found that the undisputed evidence showed that there was an "immediate and direct" link between the initial assault and the subsequent act of the intoxicated patron running over the decedent. *Id.*  The court reasoned that "without the assault and battery, i.e., the brawl, the Decedent would not have been knocked to the ground unconscious and subsequently run over," and so the "Assault & Battery" exclusion barred coverage for the claims against the bar, including the negligence claims. *Id.* at 537.  Accordingly, the court held that the insurer did not owe coverage for the claims in the underlying lawsuit. *Id.* at 539.

The *Thadeus* court discussed a similar case, *The Burlington Insurance Company v. Ceasar Salmoran d/b/a Mambo's Night Club*, which demonstrates the application of the "Assault & Battery" exclusion for claims to individuals not involved in the "assault," "battery," or altercation, but whose injuries arose at least in part out of the "assault," "battery," or altercation. In the *Mambo's Night Club* case, the court addressed a declaratory judgment action regarding coverage under a liability policy in the context of a night club altercation.  In *Mambo's Night Club*, the insurance policy offered limited coverage for liability arising out of an assault and battery. *The Burlington Insurance Company v. Ceasar Salmoran d/b/a Mambo's Night Club*, 181 F. Supp. 3d 810, 814 (D. Nev. 2015).  The incident at issue involved a fight inside the club which resulted in two men being thrown out of the club into the parking lot at which point one of the intoxicated fight patrons got into an SUV and jumped a curb, hitting a number of individuals who were not involved in the fight. *Id.* at 814–16.  The injured individuals sought coverage and argued that there were material disputes of fact as to whether their injuries arose of assault or battery. *Id.* at 815.

The court concluded that whether hitting the defendants with the SUV qualified as assault and battery was irrelevant to the analysis because:

> Defendants cannot seriously dispute they were hit because they were
> unfortunately  caught  in  the  crossfire  of  an  ongoing  altercation.

16

> But for the fight that started inside Mambo's and moved into the parking lot, Defendants would not have been injured. The theories of liability alleged in the complaint all rely on injuries that arose from assaults and batteries that began inside the nightclub and continued in the parking lot."

*Id.* at 815–16. The Ninth Circuit affirmed, finding that the policy language was clear in this regard. *The Burlington Ins. Co. v. De La Puente*, 719 F. App'x 615, 618 (9th Cir. 2018) (unpublished decision).

Similarly, in *Scottsdale Ins. Co. v. Moonshine Saloon, LLC*, 228 F.Supp.3d 554, 560 (D.S.C. 2017), the court addressed a situation which involved a declaratory judgment action brought by an insurer concerning a shooting at a bar and a chain of events in which the shooter fired the gun in reaction to being chased out of the saloon following an altercation. The court concluded that where the shooter "unintentionally struck decedent when firing 'randomly' at the side of the Saloon, the causal link between the assault and decedent's death was still immediate and direct." *Id.* at 559–60. In so holding, the court noted that the "Assault & Battery" exclusion "does not require the injured party to have been the target of the assault or battery." *Id.* As a result, the court held that the "Assault & Battery" exclusion barred coverage for the underlying claims under the policy. *Id.*; see also *Canopius US Ins., Inc. v. Middleton*, 202 F.Supp.3d 540, 546–48 (D.S.C. 2016) (holding that in the context of a shooting in a bar, the "Assault & Battery" exclusion barred coverage where even though the victim was not directly involved in the dispute).

This Court has also applied the "Assault & Battery" exclusion identical to the exclusions in the TBIC Policy which are at issue in this matter to bar coverage for any claims arising out of an assault, battery, or altercation—including claims based in negligence. *White v. Covington Specialty Ins. Co.*, No. 7:24-cv-00816-JDA, 2024 U.S. Dist. LEXIS 217450, 2024 WL 4929744 (D.S.C. Dec. 2, 2024); *The Burlington Insurance Company v. Lowery's Social Club dba*

17

*Sasser's*, C.A. No. 7:23-cv-933-TMC, 2025 U.S. Dist. LEXIS 107541 (D.S.C. Mar. 13, 2025);

*DHW Purchasing Grp., LLC v. Hub Int'l Midwest Ltd.*, No. 3:19-cv-1243-CMC, 2019 U.S. Dist.

LEXIS 192491, at \*15–23, 2019 WL 5700457 (D.S.C. Nov. 4, 2019).  Similar to the present

matter, each of these lawsuits included negligence-based claims for injuries that arose at least

in part out of an "assault," "battery," or altercation, and the Court held that "Assault &

Battery" exclusions identical to the exclusion in the matter barred coverage for such claims

because the injuries arose at least in part out of an "assault," "battery," or other altercation and/or

acts or omissions in connection with avoiding, preventing, suppressing or halting actual or

threatened "assault," "battery" or other altercation. *Id.*[5]

---

[5] Other courts around the country have also applied "Assault & Battery" exclusions identical to the exclusions in the TBIC Policy to bar coverage for negligence claims arising out of an assault, battery, or altercations, including dram shop claims. *See e.g. The Burlington Ins. Co. v. Normandy General Partners, LLC*, 560 Fed. Appx. 844 (11th Cir. 2014) (holding that the "Assault & Battery" exclusion applied to negligence claims because such claims were "connected to the underlying attacks by and necessarily 'aris[e] out of' the assault and battery"); *Womack v. Mar Jay Prods., L.L.C.*, 298 So. 3d 745, 753 (La. App. 1st Cir. Feb. 21, 2020) (holding that the "Assault & Battery" exclusion applied where a gunman fired a gun into a crowd, even if the intended target was different from the individuals struck by his gunfire); *The Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 2019 U.S. Dist. LEXIS 168508, 2019 WL 4783111 (W.D. Ken. Sept. 30, 2019) (applying the "Assault & Battery" exclusion to bar coverage for negligence claims for failing to maintain safety features because the incident involved an assault or battery); *Burlington Ins. Co. v. Am. Legion Post 230*, 2018 U.S. Dist. LEXIS 158911, 2018 WL 6566589 (S.D. Miss. Sept. 18, 2018) (noting the victim's innocence in relation to the altercation is not relevant to the interpretation of the exclusion); *The Burlington Ins. Co. v. Phillips-Garrett, Inc.*, 37 F. Supp. 3d 1005, 1008 (S.D. Ill. 2014) (holding that the "Assault & Battery" exclusion applied to bar coverage injuries arising in part out of any "battery" and "all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of [as in the underlying case] negligence"); *Hudson v. Jager Bomb LLC*, 107 So. 3d 712, 715 (La. App. 2d Cir. Nov. 14, 2012) (holding that the insurer had no duty to defend or indemnify the insured-bar in a wrongful death action filed by the mother of a man who was allegedly beaten to death by an intoxicated patron because the "Assault & Battery" exclusion barred coverage for the dram shop claims asserted in the lawsuit); *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252 (1997) (applying the "Assault & Battery" exclusion even where the assailant claimed self-defense); *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 49 Cal.Rptr.2d 567, 572 (Cal.App.4th 1996) (finding a "plethora of authority" to hold that the fact that the claim also includes separate negligent acts by the insured cannot avoid the application of the "Assault & Battery" exclusion where those alleged acts of negligence were based on the assault and battery); *Britamco Underwriters, Inc. v. Zuma Corporation*, 576 So. 2d 965 (Fla. 5th DCA 1991) (holding

18

**C.     The "Assault & Battery" Exclusions in the TBIC Policy Bar Coverage for the Claims in the Underlying Lawsuit.**

Similar to the exclusions in cases discussed above, the "Assault & Battery" exclusions in the TBIC Policy bar coverage under the CGL Coverage Part and Liquor Liability Coverage Part in the TBIC Policy for "bodily injury", "property damage", or "injury":

**(1)**     Expected or intended from the standpoint of any insured.

**(2)**     Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.

**(3)**     Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."

**(4)**     Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

[D.E. 1-5, pp. 23 and 62][6] The "Assault & Battery" exclusions in the TBIC Policy also expressly provide that the exclusions "**apply to all acts or omissions**, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the 'assault' or 'battery' or physical confrontation or altercation, **and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness** or intentional tort." *Id.*

As alleged in the Underlying Lawsuit, the claims asserted by Miles against Blue Note in the Underlying Lawsuit arose (at least in part) out of an "assault", "battery", or altercation.

---

that the assault or battery exclusion contained in a bar's insurance policy precluded coverage for patron's injuries arising out of an assault and battery by other patrons even though the injured patron asserted claims of negligence against the insured bar).

[6] Again, the TBIC Policy includes two "Assault & Battery" exclusionary provisions— one applicable to the CGL Coverage Part and one applicable to the Liquor Liability Coverage Part; however, the two exclusionary provisions are identical in all relevant respects as applicable to the claims in the Underlying Lawsuit.

Specifically, Miles alleged in the Amended Complaint that she was a patron of the bar when there was a shooting "in retaliation for a prior argument between the shooter and one of [Blue Note's] employees or agents." [D.E. 1, ¶ 14; D.E. 1-4, ¶ 24]  After the armed patron fired his weapon, it is alleged that the "crowd inside the premises surged towards the back door," and that "[t]he surging crowd and slick floor caused [Miles] to slip and fall down." [D.E. 1, ¶¶ 15; D.E. 1-4, ¶¶ 17–21]  It is alleged that Miles was injured when she was "knocked over, trampled upon, and shot while trying to exit the Defendant's premises and escape the violent and uncontrolled environment then and there existing inside the Defendant's premises." [D.E. 1-4, ¶ 62]  These allegations made by Miles in the Underlying Lawsuit are deemed admitted by Blue Note because a default was entered against it in Underlying Lawsuit, which resulted in the Damages Order against Blue Note. [D.E. 1, ¶¶ 26–27]

Based on these allegations, the "Assault & Battery" exclusions in the TBIC Policy bar coverage for the claims asserted by Miles against Blue Note in the Underlying Lawsuit because such claims arose at least in part out of the Shooting at issue.  Therefore, similar to the cases discussed above, the claims against Blue Note in the Underlying Lawsuit are excluded from coverage under the TBIC Policy.  In fact, the application of the "Assault & Battery" exclusions is even more compelling in our matter.  In the *GS Thadius* case and the *Moonshine Saloon* case, the exclusions provided that coverage was excluded if the injury arose from an "assault" or "battery." *Scottsdale Ins. Co. v. GS Thadius LLC*, 328 F. Supp. 3d 527, 532–33 (D.S.C. 2018); *Scottsdale Ins. Co. v. Moonshine Saloon, LLC*, 228 F. Supp. 3d 554, 556 (D.S.C. 2017)  However, the "Assault & Battery" exclusions in the TBIC Policy only require that the injury arise "in whole or **in part**" by an "assault," "battery," or altercation.

The claims asserted against Blue Note in the Underlying Lawsuit arose at least in part out of an "assault," "battery," or altercation during which it is alleged that Miles sustained injuries.

20

If not for the Shooting, there would have been no surging crowd that caused Miles to fall on the slick floor as she was "knocked over, trampled upon, and shot." Accordingly, Blue Note was not entitled to coverage under the TBIC Policy for the claims asserted against it in the Underlying Lawsuit, and TBIC properly denied coverage to Blue Note.

In arguing that the TBIC Policy should provide coverage for the claims asserted against Blue Note in the Underlying Lawsuit despite the "Assault & Battery" exclusion in the policy, counsel for Blue Note pulls discrete words and phrases out of the Amended Complaint in the Underlying Lawsuit in an attempt to cast the claims merely as slip and fall claims without any relationship to the Shooting. However, Blue Note's attempt to characterize Miles' claims merely as slip and fall claims unrelated to the Shooting does not withstand scrutiny based on the allegations in the Amended Complaint in the Underlying Lawsuit.

For example, Blue Note concedes that the surging crowd arose from an assault or battery (i.e. the Shooting), but then claims that there are no "factual representations indicating that Ms. Miles was either near or a member of the surging crowd" and that "mere presence of a surging crowd is not enough to assert that said crowd was the reason why Ms. Miles fell." [D.E. 7, p. 6]  Contrary to these assertions, the Amended Complaint plainly alleges that "[t]he **surging crowd** and slick floor caused [Miles] to slip and fall down." [D.E. 1-4, ¶ 21] (emphasis added)  In fact, in support of the claims in the Underlying Lawsuit, it is alleged that "[Miles] was then and there **knocked over, trampled upon, and shot** while trying to exit the Defendant's premises and escape the violent and uncontrolled environment then and there existing inside the Defendant's premises" and that "[Miles] **suffered from being knocked over, trampled upon, and shot** by other patrons then and there fleeing in an unsupervised and panicked manner from the premises of the Defendants." [D.E. 1-4, ¶¶ 62–63]  Accordingly,

21

the attempt by Blue Note to characterize the claim merely as a slip and fall claim divorced from the Shooting falls flat when confronted with the actual allegations in the Amended Complaint.

Similarly, Blue Note argues that the "Assault & Battery" exclusions should not apply because there is no allegation that "Ms. Miles was even aware that a firearm had been discharged in the premises" or that " Ms. Miles herself attempted to exit the building along with the surging crowd." [D.E. 7, p. 7]   However, nothing in the "Assault & Battery" exclusions requires that the injured party be aware that an assault or battery or other altercation is occurring or that the injured party be attempting to escape the "assault," "battery," or altercation.   Rather, the "Assault & Battery" exclusions bar coverage under the TBIC Policy where the injury or damage (1) arose in whole or in part out of any "assault" or "battery" committed or attempted by any person, (2) arose in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery," or (3) arose in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation." [D.E. 1-5, pp. 23 and 62]

Based on the plain allegations in the Amended Complaint, the claims asserted against Blue Note in the Underlying Lawsuit arose from the injuries to Miles that arose at least in part out of an "assault," "battery," or altercation.   It is specifically alleged that there was a shooting at the Bar "in retaliation for a prior argument" involving the shooter, and that "[t]he crowd inside the premises surged towards the back door," and that "the surging crowd and slick floor caused [Miles] to slip and fall down." [D.E. 1-4, ¶¶ 17–24]   In fact, it is alleged that Miles was "knocked over, trampled upon, and shot while trying to exit the Defendant's premises and escape the violent and uncontrolled environment then and there existing inside the Defendant's premises." *Id.* at ¶¶ 62–63.  Under these facts, there is an "immediate and direct" link between the Shooting

22

(which qualifies as an "assault," battery," or altercation) and the injuries to Miles from caused by "the surging crowd and slick floor" when she was allegedly "knocked over, trampled upon, and shot while trying to exit the Defendant's premises."

Accordingly, if the Court is inclined to rule on the substance of this coverage action at this stage of the litigation, the Court should enter a declaration that TBIC did not have an obligation to defend Blue Note under the TBIC Policy for the claims in the Underlying Lawsuit and that TBIC does not have a duty to indemnify Blue Note for the claims asserted against it in the Underlying Lawsuit, including the Damages Order entered against Blue Note.

## III.    THE COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION.

Although Blue Note does not cite to any legal authority for its position that "it would not be proper for the federal court to assume jurisdiction over this matter," counsel for Blue Note argues that this Court should abstain from this action because "all relevant proceedings regarding this incident and all parties involved hereto were heard in the Charleston County Court of Common Pleas, including the judgment TBIC is attempting to avoid providing coverage for by filing this action." Second, counsel for Blue Note argues that this Court should abstain because there is significant overlap in issues between this action that the Second-filed Coverage Action which was originally filed in South Carolina state court. Both of these bases for abstention should be rejected.

"A federal court has the discretion to decline to entertain a declaratory judgment action, but ... the court must do so only for 'good reason.'" *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965–66 (4th Cir. 1994) (quoting *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). The Fourth Circuit has held that a district court should "normally entertain a declaratory action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue and

23

(ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Quarles*, 92 F.2d at 325. There is no dispute that the declaratory relief sought by TBIC in the present action will serve a useful purpose in clarifying and settling a dispute that has arisen between TBIC and Blue Note (as well as Miles) with respect to coverage under the terms of the TBIC Policy for the claims against Blue Note in the Underlying Lawsuit.

Rather, it appears that Blue Note contends that the Court should abstain from this action in favor of the Second-filed Coverage Action originally filed in South Carolina state court. In *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994), the Fourth Circuit articulated the following four factors "[t]o aid district courts in balancing the state and federal interests when a parallel state action is pending" are as follows:

(1)     whether the state has a strong interest in having the issues decided in its courts;

(2)     whether the state courts could resolve the issues more efficiently than the federal courts;

(3)     whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and

(4)     whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Nautilus*, at 377. However, the requisite basis for even addressing the factors under *Nautilus*—a parallel state court action—does not exist in this case, and so there is no basis for abstention as requested by counsel for Blue Note. First, counsel for Blue Note references the proceedings in the Underlying Lawsuit as a basis for abstention; however, the Underlying Lawsuit is not a pending "parallel state action" to the present insurance coverage declaratory judgment action. Rather, the Underlying Lawsuit involved liability claims asserted by Miles against Blue Note based on the Shooting that took place at Blue Note's bar. This action seeks the interpretation of the TBIC Policy and declaration as to whether the TBIC Policy provides coverage for the claims in the Underlying Lawsuit. Additionally, contrary to Blue Note's claim that "all parties involved hereto were heard in [the Underlying Lawsuit]," TBIC was not a party to the Underlying Lawsuit.

24

Second, counsel for Blue Note references the Second-filed Coverage Action—which was originally filed in state court—as a basis for abstention in this matter. However, the Second-filed Coverage Action has been removed to federal court and is now before this Court, and therefore, is not a pending "parallel state court action" which requires an analysis of the *Nautilus* factors to determine whether abstention is appropriate. Accordingly, this Court should reject any request for abstention by counsel for Blue Note in this action because there is no "parallel state court action" pending to which this Court could or should defer to.[7]

Furthermore, even if the Second-filed Coverage Action were to be remanded to state court in South Carolina, the *Nautilus* factors do not support abstention. First, there is no strong "state interest" in having the coverage issue raised in this action decided in the state court. This coverage action does not raise a "close," "problematic," or "difficult" issue of state law that need be decided by South Carolina state courts. To the contrary, as demonstrated above, South Carolina courts have routinely addressed the application of "Assault & Battery" exclusions to bar coverage for claims identical to those in this action.

As to the second factor, the issue presented in this action involves the interpretation of the TBIC Policy, and there is no reason why the South Carolina state court would more efficiently address this issue than this Court. In fact, given the briefing already completed on the legal issues involved in this coverage dispute, including the substantive arguments related to the application of the "Assault & Battery" exclusions to the claims in the Underlying Lawsuit, it would likely be more efficient for this Court to address the parties' requests for declaratory relief in this action.

---

[7] TBIC recognizes that Miles has filed a Motion to Remand in the Second-filed Coverage Action. [D.E. 8 in the Second-Filed Coverage Action] TBIC will file a Memorandum of Law in Opposition to the Motion to Remand which will set forth the reasons that the Second-filed Coverage Action should not be remanded to state court.

25

As to the third factor, there would be overlapping issues of law between this action and the Second-filed Coverage Action; however, even if the Second-filed Coverage Action were pending in state court (which it is not) there is no reason that this Court should abstain in favor of the Second-filed Coverage Action, particularly in light of the fourth factor in the *Nautilus* case—procedural fencing.  Given the timing of the filing of the Second-filed Coverage Action after counsel for Miles received a copy of the Complaint for Declaratory Judgment with a request for waiver of service in this action, it appears that Miles filed the Second-filed Coverage Action in an effort to engage in "procedural fencing."  As such, even if the Second-filed Coverage Action were still pending in South Carolina state court (which it is not), this Court should not decline to exercise jurisdiction in this action in favor of the Second-filed Coverage Action based on the *Nautilus* factors.

In this matter, there is no dispute that the declaratory relief sought by TBIC in this action will serve a useful purpose in clarifying and settling a dispute that has arisen between TBIC and Blue Note (as well as Miles) with respect to coverage under the terms of the TBIC Policy in relation to the claims asserted against Blue Note in the Underlying Lawsuit.  Additionally, there is no pending parallel state court action that serves as a basis for abstention in this action. Accordingly, this Court should also deny Blue Note's Motion to Dismiss on the basis of abstention.

## CONCLUSION

Blue Note filed this Motion to Dismiss based on an argument that this Court should find that coverage is afforded under the TBIC Policy for the claims asserted against Blue Note in the Underlying Lawsuit.  Such argument is misguided and has been repeatedly rejected by courts in this circuit in relation to declaratory judgment actions.  Rather, the standard on a motion to dismiss a declaratory judgment action is whether the complaint has pled an actual controversy

26

between the parties.  Here, there is no dispute that there is an actual controversy between the parties with regard to the question of whether coverage is afforded under the TBIC Policy for the claims in the Underlying Lawsuit.  Accordingly, this Court should reject the Motion to Dismiss filed by Blue Note on the theory that the Complaint for Declaratory Judgment fails to state a claim upon which relief can be granted.

Furthermore, to the extent that the Court is inclined to address the merits of the claim for declaratory relief, the "Assault & Battery" exclusion clearly and unambiguously bars coverage for the claims asserted against Blue Note in the Underlying Lawsuit.  Therefore, if the Court is inclined to address the merits of this action at this time, it should enter a declaratory judgment that the TBIC Policy does not provide coverage for the claims in the Underlying Lawsuit and so TBIC does not have an obligation to indemnify Blue Note for such claims or the Damages Order against Blue Note in the Underlying Lawsuit.

Finally, Blue Note argues that this Court should abstain from hearing this matter.  However, there is no pending parallel state court action which could serve as a basis for abstention.  Additionally, even if the Second-filed Coverage Action remained in state court in South Carolina, the *Nautilus* factors considered by courts in this circuit for abstention do not support abstention in favor of the Second-filed Coverage Action.  Accordingly, this Court should also deny Blue Note's Motion to Dismiss on the basis of abstention

27

This the 13th day of April, 2026.

/s/ David G. Harris II
David G. Harris II (S.C. Federal Bar No.: 12039)
David L. Brown (N.C. State Bar No. 18942)
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina  27408
Telephone:    336.419.4900
Facsimile:    336.419.4950
Email:        dbrown@goldbergsegalla.com
              dharris@goldbergsegalla.com

*Attorneys for Plaintiff TBIC*

28

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing Plaintiff TBIC's Memorandum of Law in Opposition to Defendant Blue Note's Motion to Dismiss was served upon the following counsel of record by way of the Court's CM/ECF system, which will automatically send notice to all counsel of record:

Vanisa Siler Brown (Fed. Bar No.: 13425)
SILER LAW FIRM, LLC
1318 N. Main St. # 1353
Summerville, SC 29483
Office: 843.887.8877
Mobile: 843.597.0494
attorney@thesilerfirm.com
*Attorney for Defendant The Blue Note Bistro, LLC*

Jeff Buncher, Jr. (Fed. Bar No. 11113)
Gregory D. Keith (Fed. Bar No. 6466)
URICCHIO HOWE KRELL JACOBSON
TOPOREK & KEITH, P.A.
P.O. Box 399
Charleston, SC 29402
Office:  843.723.7491
jeff@uricchio.com
greg@uricchio.com
*Attorneys for Defendant Tina Miles*

This the 13th day of April, 2026.

GOLDBERG SEGALLA LLP

/s/ David G. Harris II
David G. Harris II (S.C. Federal Bar No. 12039)
David L. Brown (N.C. State Bar No. 18942)
701 Green Valley Road, Suite 310
Greensboro, North Carolina  27408
Telephone:  336.419.4910
dharris@goldbergsegalla.com
dbrown@goldbergsegalla.com

*Attorneys for Plaintiff TBIC*

29